UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JACK TAYLOR, JR.,
a/k/a, Jack Lee Taylor, Jr.,

                     Petitioner,

       v.

TERESA TYNON, Superintendent of
Washington Correctional Facility,

                     Respondent.

9:19-CV-1016
(BKS)

_____

APPEARANCES:                                          OF COUNSEL:

JACK TAYLOR, JR.
Petitioner, pro se
10-A-0990
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

HON. LETITIA JAMES                                   PRISCILLA STEWARD, ESQ.
Attorney for Respondent                               Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

BRENDA K. SANNES
United States District Judge

**DECISION and ORDER**

**I.      INTRODUCTION**

     Petitioner Jack Taylor, Jr. seeks federal habeas corpus relief pursuant to 28 U.S.C. §

2254.  Dkt. No. 1, Petition ("Pet.").  Respondent has opposed the petition.  Dkt. No. 9,

Response; Dkt. No. 9-1, Memorandum of Law in Opposition ("Resp. Mem."); Dkt. No. 10,

Unsealed State Court Records ("USR"); Dkt. No. 11, Sealed State Court Records ("SCR").

Petitioner did not file a reply.

For the reasons that follow, petitioner's habeas petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

On October 2, 2008, petitioner was arraigned on an indictment charging him with rape in the third degree, in violation of New York Penal Law §130.25(3), and forcible touching, in violation of New York Penal Law §130.52.  SSR 006.[1]  On October 17, 2008, petitioner's counsel filed an omnibus motion seeking, among other things, dismissal of the indictment and suppression of statements made by petitioner to law enforcement.  SSR 013-029.  On December 5, 2008, Washington County Court Judge Kelly S. McKeighan denied petitioner's omnibus motion insofar as it sought dismissal of the indictment, and granted the motion requesting suppression of certain statements to the extent of a *Huntley* hearing.[2]  SSR 052-053.

On December 19, 2008, petitioner appeared with counsel before Judge McKeighan for a *Huntley* hearing, and counsel announced that petitioner was willing to plead guilty to third-degree rape in exchange for a sentence of six months in jail and ten years of probation, and that petitioner would also waive his right to appeal.  SSR 064-066.  The prosecutor stated on the record that in light of the plea, the People would not seek to add an additional rape charge with respect to the same victim.  SSR 067.  Petitioner then told the court that he understood the terms of his plea agreement and wanted to enter the plea.  SSR 067-069.

---

[1] Citations to the parties' submissions, with the exception of the Sealed State Court Record ("SCR") and Unsealed State Court Records ("USR"), refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Because the SCR and USR are Bates Stamped and already consecutively paginated, the Court will refer to the Bates Numbering at the bottom of these documents.

[2] *People v. Huntley*, 15 N.Y.2d 72 (1965).

After being placed under oath, petitioner told the court that he had sufficient time to discuss his case with his attorney and was satisfied with his attorney's handling of his case. SSR 068.  Both petitioner and his attorney told the court that petitioner's attorney discussed the strength of the People's case against petitioner and any possible defenses he may have to the charges.  *Id*.  Petitioner assured the court that he had decided he would rather plead guilty than go to trial and raise his potential defenses.  *Id*.

Petitioner advised the court that he was taking medication for "anxiety and depression[,]" which helped his thought process.  SSR 068-069.  Petitioner further stated that he understood his attorney, did not feel "uncertain or unclear" about anything, did not have any difficulty communicating with his attorney, was not under the influence of any drugs or alcohol, and felt he was in fine physical and mental health.  SSR 069-070.

Petitioner also indicated that he understood that by pleading guilty he was giving up his right to a jury trial and the prosecutor being required to present a case proving his guilt beyond a reasonable doubt.  SSR 070.  In addition, petitioner expressed his understanding that he was giving up his right to testify, that his guilty plea was the same as a conviction at trial, and that by pleading guilty, he was giving up his right to appeal.  SSR 071-072. Petitioner further stated that nobody had pressured him to enter a guilty plea or waive his right to appeal.  *Id.*

After conferring with his attorney, petitioner signed a written waiver of appeal before the court, and stated that he understood the terms of the waiver and did not have any questions about it.  SSR 072.  The court then advised petitioner of the consequences of pleading guilty, including that he must certify as a sex offender and would become a prior

3

felony offender.  SSR 073.  Petitioner stated that he understood these consequences, after which the following colloquy between the court and petitioner occurred:

> THE COURT: On or about September 23, 2008, were you in the village of Hudson Falls?
>
> [PETITIONER]: Yes, I was, Your Honor.
>
> THE COURT: Is that in the county of Washington, state of New York?
>
> [PETITIONER]: Yes.
>
> THE COURT: Did you engage in sexual intercourse with a female whose initials are CT?
>
> [PETITIONER]: Yes, Your Honor.
>
> THE COURT: Did you do so without her consent in that at the time of the act, she clearly - -
>
> [PETITIONER]: Yes.
>
> THE COURT: - - expressed that she did not consent to engage in the act?
>
> [PETITIONER]: Yes, I have, Your Honor.
>
> THE COURT: Satisfied?
>
> [ASSISTANT DISTRICT ATTORNEY]: I'm sorry. I didn't hear the. . .
>
> [PETITIONER]: Yes.
>
> THE COURT: Simple question just for clarity of the record, did you have sexual intercourse when you knew she didn't want to because she had told you she didn't want to?
>
> [PETITIONER]: Yes, Your Honor.

4

. . .

| | |
|---|---|
| THE COURT: | Sir, you've said a great many things today. You've been under oath at the time. So, if in the future you should give a different version of events other than what you swore to today, you could be subject to a perjury charge. Is everything you said here today true and accurate? |
| [PETITIONER]: | Yes, Your Honor. |
| THE COURT: | How do you plead to the charge of Rape in the Third Degree, a Class E felony, in violation of Section 130.25 subdivision 3 of the Penal Law? |
| [PETITIONER]: | Guilty. |

SSR 074-76.

On January 23, 2009, petitioner was sentenced to the agreed upon sentence of six months imprisonment and ten years of probation.  SSR 079, 083; USR 001.

Thereafter, petitioner filed an appeal, and his assigned counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), seeking relief from assignment on the ground that the appeal presented no non-frivolous issues for the appellate court's consideration. SSR  098-172.  The People submitted a brief joining in the application.  SSR 173-227.

On February 4, 2010, the Appellate Division, Third Department, unanimously affirmed the judgment of conviction and granted counsel's request for leave to withdraw. *People v. Taylor*, 70 A.D.3d 1066 (3d Dep't 2010); USR 001-002.  Petitioner sought leave to appeal to the New York Court of Appeals to review whether the Appellate Division erred in determining that there were no meritorious grounds for reversal of the conviction.  SSR

228-229.  On January 13, 2011, the New York Court of Appeals dismissed the leave application.  *People v. Taylor*, 16 N.Y.3d 746 (2011); USR 003.

While petitioner's direct appeal was pending, he filed a pro se motion to vacate his judgment of conviction pursuant to CPL § 440.10 ("First 440 Motion"), arguing that he was denied the effective assistance of counsel.  USR 004-012.  Petitioner specifically claimed that counsel (1) failed to subpoena a laptop, (2) failed to consult with him about motion practice, (3) improperly counseled him that the People would use a "tape recording" against him at trial, (4) failed to investigate the victim's background, and (5) failed to explain what would happen if petitioner proceeded to trial.  USR 009-010.  The People filed an affirmation opposing the First 440 Motion.  USR 013-018.

On October 15, 2010, the Washington County Court denied the First 440 Motion, holding that petitioner's claim of ineffective assistance of counsel could have been raised on direct appeal, but was not.  USR 019-020.[3]

By pro se papers dated October 20, 2016, petitioner again moved to vacate his conviction pursuant to CPL § 440.10 ("Second 440 Motion"), arguing that (1) he never saw any of the evidence against him because the People did not disclose the results of a rape kit or any other evidence of his guilt, (2) he was not asked to take a polygraph test, (3) someone tampered with the statement he gave to the police, and (4) his guilty plea was not valid because he was suffering from mental illness and was under the influence of medication for depression.  USR 020-029.

_____

[3] In the Memorandum of Law in Opposition, counsel for Respondent states that petitioner did not seek leave to appeal the denial of the First 440 Motion, and "according to the Washington County District Attorney's Office, the People did not serve petitioner a copy of the decision with notice of entry."  Resp. Mem. at 8.

On September 25, 2019, the Washington County Court denied petitioner's Second 440 Motion.  USR 030-034.[4]

## III.    THE PETITION, RESPONSE, AND SUPPLEMENTAL LETTER

In his Petition, petitioner argues that he is entitled to federal habeas relief because (1) the People did not have legally sufficient evidence to support his conviction; (2) he was not mentally fit to enter a guilty plea; (3) he was denied conflict-free counsel; and (4) his counsel coerced his guilty plea by failing to adequately discuss the strengths and weaknesses of his case.  Pet. at 5-11.[5]

Respondent argues that the Petition should be dismissed because petitioner's claims are unexhausted and meritless.  Resp. Mem. at 9-22.

Several months after the Response was filed, petitioner submitted a letter wherein he inquired as to the status of his petition, and stated that he still desires to "fight this case" because "the State" committed "a Brady violation" by failing to produce "a rape kit, DNA testing, forensic testing, [a] victim statement[,] and [a] pre-sentence investigation report." Dkt. No. 15 ("Supplemental Letter").  It is unclear whether the Supplemental Letter is an attempt to amend the Petition to seek habeas relief on the grounds that the prosecution failed to disclose potentially exculpatory evidence, or clarify petitioner's intent for the Petition to include this claim.

---

[4]  In the Memorandum of Law in Opposition, counsel for Respondent states that petitioner did not seek leave to appeal the denial of the Second 440 Motion, and the People did not serve petitioner a copy of the decision with notice of entry.  Resp. Mem. at 9.

[5]  Ground One and Ground Three in the petition each challenge the sufficiency of the evidence against petitioner.  *See* Pet. at 5-6, 8-9.  Ground One also challenges the failure to disclose a "rape kit" and "DNA test." *Id*. at 5-6.  Ground Four raises two separate claims regarding trial counsel's representation.  *Id*. at 10-11.

Insofar as petitioner wishes to amend his Petition, his submission is not a proper motion to amend.  *See* N.D.N.Y. L.R. 15.1.  Moreover, the Court does not construe the Petition, by itself, to seek habeas relief based on an alleged *Brady* violation – an argument Respondent also did not address in the Response or Memorandum of Law in Opposition.[6] Nonetheless, for the sake of completeness, the Court will address this issue below.

## IV.    DISCUSSION

### A.    Exhaustion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs petitions for individuals incarcerated for the commission of state crimes who are seeking federal habeas corpus relief.  28 U.S.C. § 2254.  The ADEPA provides that an application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (B)(I), (ii).  "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]'"  *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition.  Substantive exhaustion requires

---

[6] The term "Brady" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law, addressed by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963).

that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000).  In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of his or her claims.  *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton v. Fillion*, No. 9:03-CV-1377 (DNH/GJD), 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007).  "[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 510 U.S. 722, 735 n.1 (1991).

Here, petitioner acknowledges that he did not raise any of the grounds on which he seeks federal habeas relief on direct appeal.  Pet. at 5-11.[7]  Petitioner did, however, raise two of the grounds on which he seeks federal habeas relief – that he was mentally unfit to plead guilty and that the evidence against him was legally insufficient to establish his guilt – in his Second 440 Motion.  USR 021-027.  The Washington County Court denied those

---

[7] Petitioner claims that he failed to exhaust his state court remedies because he was "depressed, stressed, and going through a lot[,]" did not know much about the evidence against him, and did not understand the law.  Pet. at 5-11.

claims on the merits, *see* USR 031-034, and the record is devoid of any evidence showing that petitioner sought leave to appeal to the Appellate Division.

According to Respondent, petitioner still has the opportunity to appeal the Washington County Court's denial of the Second 440 Motion because the People never served him with a copy of that decision. *See* Resp. Mem. at 11 (citing CPL § 460.10(4)(a)). As a result, and assuming that, as of the date of this Decision and Order, the People still had not served petitioner with a copy of the County Court decision, he still has remedies available to him in the state court with respect to his first two arguments.

In addition, petitioner's arguments regarding a "Brady violation" and trial counsel's representation were never asserted in the state courts.[8]  Moreover, these claims appear to be based on matters outside the record.[9]  Thus, it appears these claims are appropriate for review in a CPL § 440.10 motion.  *See People v. Pinto*, 133 A.D.3d 787, 790 (2d Dep't 2015) (where petitioner's claims involve matters both on and off the record, the proper procedural vehicle is a motion pursuant to CPL § 440.10); *People v. Maxwell*, 89 A.D.3d 1108, 1109 (2d Dep't 2011) ("[W]here . . . a defendant presents a mixed claim of ineffective assistance that

---

[8] Although the First 440 Motion was based on trial counsel's ineffective representation, the articulated reasons for trial counsel's ineffectiveness appear to differ from the arguments raised in the Petition. *Compare* USR 004-012 *with* Petition at 10-11.  In addition, the First 440 Motion did not include a claim that trial counsel should not have represented petitioner due to a conflict of interest.  *See* USR 004-012.

[9] Petitioner contends that he was never provided with a "rape kit" or "DNA test[.]"  *See* Pet. at 5.  However, documents related to such diagnostic procedures were not included in the State Court Record.  Therefore, any such documents remain outside of the record presented to the state courts.  In addition, petitioner argues that trial counsel failed to discuss the strengths and weaknesses of his case, coerced him into pleading guilty by discussing the possibility of an additional rape charge and admission at trial of his statements to law enforcement, and had a conflict of interest representing him due to previously representing his brother. Pet. at 10-11.  The record, however, is devoid of any information concerning counsel's alleged representation of petitioner's brother. Moreover, aside from petitioner's statement during his plea allocution that he spoke with counsel about the strengths of his case and potential defenses to the charges against him, the record is devoid of specific details regarding petitioner's conversations with trial counsel, including when such discussions occurred.

10

depends, in part, upon matters that do not appear on the record, it cannot be said that 'sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal' (CPL 440.10 [2] [b]). Therefore, such a mixed claim, presented in a CPL 440.10 motion, is not procedurally barred, and the CPL 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety[.]"); *cf. Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 353 (N.D.N.Y. 2013) (explaining that where a petitioner has already used his or her direct appeal, "collateral review of . . . record-based claims is also foreclosed.") (citing N.Y. Crim. Pro. Law § 440.10(2)(c)).

Based on the foregoing, petitioner's claims are unexhausted. *See Cano v. Walsh*, 170 Fed. App'x 749, 750 (2d Cir. 2006) ("The claim was not properly presented to the courts of New York because the petitioner never sought leave to appeal to the New York Court of Appeals the decision of the Appellate Division[.]") (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)); *see also Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) ("Until [petitioner] presents his claim to the highest state court – whether or not it seems likely that he will be held to be procedurally barred – he has not exhausted available state procedures.").  Moreover, remedies appear to remain available to him in state court with respect to each of his claims.

## B.    Meritless Claims

Regardless of petitioner's ability to still adjudicate his claims in an appropriate state court forum, under the AEDPA, a federal habeas court may still deny a claim on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts

of the State." 28 U.S.C. § 2254(b)(2).

The AEDPA "does not articulate a standard for denying a petition pursuant to Section 2254(b)(2), and neither the Supreme Court nor the Second Circuit has established one." *Nickels v. Conway*, No. 10-CV-0413, 2015 WL 4478970, at *18 (W.D.N.Y. July 22, 2015) (noting that "[i]n this Circuit, the various formulations for the proper standard to be used share 'the common thread of disposing of unexhausted claims that are unquestionably meritless'" (quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010)), *certificate of appealability denied* (2d Cir. Dec. 29, 2015).

However, the Supreme Court has made clear that district courts can "deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, *see* § 2254(a)." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).  Thus, unexhausted claims found to be meritless on de novo review may be dismissed on the merits. *See, e.g., DeVault v. Griffin*, No. 16-CV-7281, 2020 WL 5209731, at *2 (S.D.N.Y., Aug. 31, 2020) ("[A] petitioner's unexhausted claims can be denied on their merits under a de novo standard of review." (citing 28 U.S.C. § 2254(b)(2) and *Berghuis*, 560 U.S. at 390)).

### 1.  Petitioner's Challenge to the Sufficiency of the Evidence

Petitioner argues that his conviction was not supported by legally sufficient evidence because no "rape kit" or "DNA test" was performed.  Pet. at 5.  Petitioner further argues that statements he made to law enforcement prior to his arrest "should of not been used[.]"  Pet.

at 8.[10]

"[I]t is well settled that a guilty plea represents a break in the chain of events which has preceded it in the criminal process and [a petitioner] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Williams v. Gonyea*, No. 9:16-CV-0460 (JKS), 2017 WL 4990645, at *5 (N.D.N.Y. Oct. 31, 2017) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)) (quotation marks omitted).  Thus, insofar as petitioner seeks to challenge the evidence presented to the grand jury as either improper or insufficient to establish the offenses charged in the indictment, his guilty plea rendered "any errors in the grand jury proceeding" harmless.  *See Jordan v. Dufrain*, No. 98-CV-4166, 2003 WL 1740439, at *3 (S.D.N.Y. Apr. 2, 2003); *Brown v. Allen*, No. 08-CV-5795, 2010 WL 1459189, at *4 (S.D.N.Y. Apr. 12, 2010) ("Regardless of whether there were errors in the grand jury proceeding, there is no basis for the withdrawal of [p]etitioner's guilty plea because the plea itself rendered any alleged errors in his grand jury proceedings harmless."); *Alston v. Ricks*, No. 01-CV-9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan. 7, 2003) ("[A] guilty plea extinguishes the ability of a habeas petitioner to raise a claim regarding misconduct before a grand jury.").

Insofar as petitioner claims that there was a lack of sufficient evidence to convict him of the charges in the indictment, petitioner freely admitted under oath that on September 23, 2008, he engaged in sexual intercourse with a woman knowing that she did not consent to the act.  *See* SSR 074-076.  In other words, he confessed to committing the acts that

---

[10]  As noted, at the time of petitioner's guilty plea, the trial court had yet to rule on the admissibility of statements petitioner made to law enforcement.  Thus, such statements were only "used" leading up to the guilty plea insofar as they were presented to the grand jury to obtain an indictment.  *See* SSR 008-009, SSR 050-051.

comprise the elements of third-degree rape.  *See* N.Y. Penal Law §130.25(3).  In addition, petitioner affirmed to the trial court that his statements were true and accurate.  SSR 077.

By pleading guilty to third-degree rape, petitioner forfeited his right to challenge the sufficiency of the evidence against him at a later date.  *See Proctor v. McCarthy*, No. 19-CV-2988, 2020 WL 1149660, at *18 (S.D.N.Y. Mar. 10, 2020) ("By entering a guilty plea, Proctor forfeited his right to challenge his conviction based on the sufficiency of evidence—regardless whether as to the physical injury element or that of the underlying felony."); *Mudd v. Connell*, No. 08-CV-3896, 2009 WL 2337993, at *4 (S.D.N.Y. July 29, 2009) ("Petitioner's guilty plea in the instant case prevents him from meeting this heavy burden and challenging the legal sufficiency of the evidence against him."); *United States ex. rel. Mendez v. Fish*, 259 F. Supp. 146, 148 (S.D.N.Y. 1965) ("[O]bjections to the nature of the evidence obtained by and available to the prosecution will not survive a plea of guilty and are not available on an application for a writ of habeas corpus.").

In light of the foregoing, petitioner's claims regarding the sufficiency of the evidence against him are meritless.

### 2. Petitioner's Challenge to the Prosecution's Disclosures

The petition appears to alternatively argue that if DNA testing and a "rape kit" were performed, he did not receive a copy of the results.  Pet. at 5.  In addition, as noted, petitioner contends in his Supplemental Letter that "the State" committed "a Brady violation" by failing to produce "a rape kit, DNA testing, forensic testing, [a] victim statement[,] and [a] pre-sentence investigation report."

"To establish a *Brady* violation, a petitioner must show that (1) the undisclosed

evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 Fed. App'x. 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).  "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief."  *Flynn v. Colvin*, No. 9:13-CV-1247 (JKS), 2016 WL 7053582, at *6 (N.D.N.Y. Dec. 5, 2016) (citing *Skeete v. New York*, No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.")).

As an initial matter, petitioner has failed to establish that the materials he believes were not disclosed by the prosecution ever even existed.  Moreover, even if the Court were to assume that such materials exist, petitioner has failed to explain how such materials establish that he was innocent of the crime to which he plead guilty.  Thus, even assuming exculpatory evidence must be disclosed prior to the entry of a guilty plea,[11] petitioner's conclusory suggestion that the prosecution failed to turn over "a rape kit, DNA testing, forensic testing, [a] victim statement[,] and [a] pre-sentence investigation report" is insufficient to establish a *Brady* claim in this case.  *See Flynn*, 2016 WL 7053582, at *6 ("Flynn alleges that he was lied to about the length and content of the tape recording of the incident and was not given a police incident report. But Flynn provides nothing more than his

---

[11] *See Gathers v. New York*, No. 11-CV-1684, 2012 WL 71844, at *9 (E.D.N.Y. Jan. 10, 2012) ("[T]he law is unsettled as to whether such evidence must be disclosed prior to entry of a guilty plea."); *Porath v. Miller*, No. 9:15-CV-0091 (JKS), 2016 WL 3172872, at *4 (N.D.N.Y. June 6, 2016) ("[T]he Supreme Court has never held that exculpatory material (as opposed to impeachment material) must be disclosed prior to a guilty plea.").

unsupported assertions in support of this claim."); *Gathers*, 2012 WL 71844, at *9 ("[Petitioner's] conclusory assertion that the government failed to turn over evidence proving his innocence is insufficient to establish a *Brady* claim." (collecting cases)); *see also Strickler*, 527 U.S. at 281-82 (noting that "prejudice" is a necessary component of a *Brady* claim).

Accordingly, petitioner's claim that the prosecution violated his due process rights by failing to disclose favorable evidence is meritless.

### 3. Petitioner's Challenge to the Voluntariness of His Guilty Plea

Petitioner claims that he was mentally unfit to plead guilty, and only pleaded guilty because he was "depressed, stressed, upset, confused and not [himself] at the time[,]" and "afraid to tell the judge or courts that [he] had mental health [problems]" and suffered from "ADHD, PTSD[, and] low self esteem" as a result of experiencing prior sexual abuse for which he never obtained "help[.]"  Pet. at 7.[12]

In order to comply with constitutional due process protections, a guilty plea must be knowing, voluntary and intelligent.  *See United States v. Ruiz*, 536 U.S. 622, 628-29 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Brady v. United States*, 397 U.S. 742, 748 (1970)).  The Supreme Court has long recognized that it is a violation of due process to convict a person while he is legally incompetent.  *See, e.g., Pate v. Robinson*, 383 U.S. 375, 378, 385 (1966).  A criminal defendant is incompetent to proceed if "he lacks the capacity to

---

[12]  The Washington County Court rejected petitioner's claim of an invalid plea, raised in his Second 440 Motion, finding that his challenge to his mental fitness was undermined by his sworn statements at his plea hearing that he did not have any medical or mental health reasons why he could not understand the proceeding, and felt physically and mentally healthy.  USR 032-033.

understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements." *Carpenter v. Unger*, 9:10-CV-1240 (GTS/TWD); 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014); *see also Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them."). "A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (internal quotation marks and citations omitted); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Moreover, it is well settled that "some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Nichols*, 56 F.3d 403, 412 (2d Cir. 1995); *see also Godinez v. Moran*, 509 U.S. 389, 394-402 (1993) (defendant in capital case competent to plead guilty despite suicide attempt and the debilitating effects of a variety of medications).

In this case, the record clearly shows petitioner's ability to understand and respond to the trial court's questions in a concise and coherent manner. Indeed, petitioner's sworn testimony during his plea indicates that he understood the myriad of trial rights that he was

giving up, had adequate time to discuss the plea offer with his counsel, was voluntarily pleading guilty because he was actually guilty, and was satisfied with the representation and counsel that he had received.  SSR at 068-077.  Petitioner also expressly informed the court that medication he was taking for his anxiety and depression helped him with his thought process, and that he did not feel unclear or uncertain about what was happening, and was not suffering from any mental health problems that would thwart his ability to understand the proceedings.  SSR 068-070.

In addition, petitioner's attorney addressed the court during petitioner's plea and stated that he had no difficulty communicating intelligently with petitioner.  SSR 068-070.  Counsel's representation provides additional evidence that petitioner was competent to proceed.  *See United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986); *see also United States v. Ekeagwu*, 369 Fed. App'x 252, 253 (2d Cir. 2010).  Furthermore, petitioner has failed to identify anything in the record or introduce any new evidence that might show that he was mentally unfit and could not proceed with his plea.  *Cf. United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) ("[Plea agreement] testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligent made." (citations omitted)).

In light of the foregoing, petitioner's claim that he was not mentally fit to plead guilty is meritless.

### 4.  Petitioner's Challenge to Representation by Trial Counsel

Petitioner raises two claims related to his trial counsel's representation.  First,

petitioner alleges that counsel failed to discuss the strengths and weaknesses of the

People's case against him, and coerced him into pleading guilty by stating that if he did not

plead guilty, "the tape recording" of his discussion with law enforcement was "hanging over

[his] head[,]" which could give rise to "another rape charge[.]"  Pet. at 10-11.  Second,

petitioner argues that counsel represented him despite having a conflict of interest as a

result of previously representing his brother.  *Id*.

### a.  Inadequate Advice and Plea Recommendation

To prevail on an ineffective assistance of counsel claim, the petitioner must show (1)

that defense counsel's representation "fell below an objective standard of reasonableness";

and (2) "that the deficient performance prejudiced the defense."  *Strickland v. Washington*,

466 U.S. 668, 687-88 (1984).

As an initial matter, petitioner's claim that trial counsel failed to discuss the strengths

and weaknesses of his case is belied by his sworn statement at the plea allocution that

counsel did in fact discuss with him the strength of the People's case and any possible

defenses that petitioner may have to the charges.  SSR 068.  Petitioner also told the trial

court that he had sufficient time to discuss his case with his attorney and that he was

satisfied with counsel's handling of the case.  *Id*.  These plea allocution statements carry a

"strong presumption of veracity" and are generally treated as conclusive in the face of

subsequent attempts to contradict them.  *Adames*, 171 F.3d at 732 (quoting, *inter alia*,

*Blackledge*, 431 U.S. at 74); *United States v. Torres*, 129 F.3d 710, 716-17 (2d Cir. 1997)

(district court properly rejected claims that guilty plea was involuntary because defense

counsel coerced plea and plea was entered out of fear that defense counsel was unprepared

to go to trial where such claims were contradicted by defendant's plea allocution).

Moreover, petitioner has not provided any evidence regarding his discussions with trial counsel, and the petition states only that trial counsel spoke to him about the possibility of a recorded statement being used against him at trial, and the potential addition of "another rape charge" if he does not plead guilty.  Pet. at 10.  Discussions of this nature are neither inappropriate nor coercive.  *See United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) ("[D]efense counsel's blunt rendering of an honest but negative assessment of [petitioner's] chances at trial, combined with advice to enter the plea, [does not] constitute improper behavior or coercion that would suffice to invalidate a plea."); *Sylvester v. United States*, 369 Fed. App'x 216, 218 (2d Cir. 2010) ("The district court properly recognized that had the matter proceeded to trial and the Government chosen to call its confidential informant to testify that Sylvester sold him a firearm and was carrying a firearm during the drug sale-which the Government proffered it would have done-that testimony alone could form the basis of a conviction. Such is the law in this Circuit. . . . Thus, Sylvester's trial counsel did not err in providing him with advice to the same effect."); *see also Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

In addition, the evidence in the record shows that in exchange for petitioner's guilty plea, the prosecution agreed not to present an additional statutory rape charge to the grand jury.  SSR 067.  This result further belies petitioner's contention that trial counsel's representation was objectively unreasonable.  *See, e.g., Seifert v. Keane*, 74 F. Supp. 2d

199, 206 (E.D.N.Y. 1999) ("Given the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient[.]"), *aff'd*, 205 F.3d 1324 (2d Cir. 2000).

Because petitioner has failed to establish that his trial counsel's performance was constitutionally deficient, the Court need not reach the question of whether petitioner was prejudiced by the advice he received.  However, for the sake of completeness, the Court notes that petitioner has also failed to provide any explanation for why he believes he likely would have been acquitted at trial, or received a more favorable sentence, had he not plead guilty.  *See Belle v. Superintendent*, No. 9:11-CV-0657 (NAM), 2013 WL 992663, at *12 (N.D.N.Y. Mar. 13, 2013) ("In the context of a guilty plea, [in order to establish prejudice,] the [petitioner] must show a reasonable possibility that but for counsel's errors the outcome would have been different—i.e., the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence." (citing *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985)).  In addition, as noted, had petitioner rejected the plea offer, he would have potentially faced an additional rape charge, which he also has not addressed.  Thus, petitioner has also failed to show that he was prejudiced by trial counsel's performance.

Based on the foregoing, petitioner's ineffective assistance claim based on trial counsel's alleged failure to advise on the strengths and weaknesses of petitioner's case and discussion of considerations for pleading guilty is meritless.

### b. Conflict of Interest

A criminal defendant's Sixth Amendment right to counsel includes the right to representation by conflict-free counsel.  *See Wood v. Georgia*, 450 U.S. 261, 271 (1981);

*Williams v. Meachum*, 948 F.2d 863, 866 (2d Cir. 1991); *accord Burchard v. Schneiderman*, 445 Fed. App'x 415, 416 (2d Cir. 2011).  "An attorney labors under an actual conflict of interest when, during his representation of the defendant, 'the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action.'" *Burchard*, 445 Fed. App'x at 416 (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)).

In this case, although petitioner asserts that his trial counsel previously represented his brother, he has not provided any evidence that substantiates this allegation.  Moreover, even assuming that trial counsel previously represented petitioner's brother, petitioner has failed to explain the nature of such representation, or how it created a conflict of interest. Petitioner does not assert, for example, that his brother was involved in his criminal case, or would have been called as a witness for the prosecution or defense had the case proceeded to trial.  Nor does he allege that there was a defense strategy that trial counsel failed to pursue because of counsel's loyalty to petitioner's brother.  Furthermore, insofar as petitioner claims that trial counsel failed to investigate certain facts or present certain arguments to the trial court as a result of previously representing petitioner's brother, such action or inaction does not relate to the voluntariness of petitioner's plea, and is therefore barred by *Tollett*.  *See Coward v. Bradt*, No. 9:11-CV-1362 (LEK/CFH), 2013 WL 6195751, at *15 (N.D.N.Y. Nov. 27, 2013) ("Coward's grounds for the ineffective claim, that counsel had a conflict of interest and also failed to move to dismiss the indictment, do not relate to the voluntariness of Coward's plea and are barred by *Tollett*." (citing *Canal v. Donelli*, No. 06-CV-1490, 2008 WL 4287385, at *3 (N.D.N.Y. 2008) (rejecting, pursuant to *Tollett*, the claim that counsel failed to call petitioner to testify before the grand jury)); *Ture v. Racette*,

No. 9:12-CV-1864 (JKS), 2014 WL 2895439 at *9 (N.D.N.Y. June 26, 2014) ("the *Tollett* bar .

. . also applies to 'ineffective assistance claims relating to events prior to the guilty plea.'")

(citation omitted); *James v. Smith*, No. 9:12-CV-0857 (FJS/ATB), 2013 WL 4519773 at *8-9

(N.D.N.Y. Aug. 26, 2013) ("Petitioner's arguments that trial counsel was ineffective in

pre-plea representation, e.g., by not conducting further investigation into whether the victim

suffered 'physical injury' was an antecedent claim not affecting the voluntariness of his guilty

plea. Such claims are effectively barred from consideration in a habeas proceeding by

*Tollett*[.]").

In short, assuming trial counsel did in fact represent petitioner's brother before

representing petitioner, there is no basis to conclude that it was objectively unreasonable for

trial counsel to represent petitioner, or that petitioner suffered prejudice as a result of being

represented by trial counsel.  Accordingly, petitioner's ineffective assistance claim based on

trial counsel's alleged conflict of interest is meritless.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED IN ITS**

**ENTIRETY**; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner

failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §

2253(c)(2) requires;[13] and it is further

---

[13] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural

**ORDERED** that any further request for a Certificate of Appealability must be

addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in

accordance with the Local Rules.

Dated: February 16, 2021
      Syracuse, NY

Brenda K. Sannes
U.S. District Judge

---

ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).